UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| ROGER DAVIDSON, on behalf of himself and all others similarly situated, | **08 CV 01496** |
| Plaintiff, | CIVIL ACTION No. |
| v. | CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS |
| SUNOPTA INC., STEVEN R. BROMLEY and JOHN H. DIETRICH, | JURY TRIAL DEMANDED |
| Defendants. | |

RECEIVED
FEB 13 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, Roger Davidson ("Plaintiff"), alleges the following based upon the

investigation by Plaintiff's counsel, which included, among other things, a review of the

defendants' public documents, conference calls and announcements made by defendants,

United States Securities and Exchange Commission ("SEC") filings, wire and press releases

published by and regarding SunOpta Inc. ("SunOpta" or the "Company"), securities analysts'

reports and advisories about the Company, and information readily available on the Internet,

and Plaintiff believes that substantial additional evidentiary support will exist for the

allegations set forth herein after a reasonable opportunity for discovery.

## I.  NATURE OF THE ACTION AND OVERVIEW

1.     This is a federal class action on behalf of purchasers of SunOpta's securities

between May 8, 2007 and January 25, 2008, inclusive (the "Class Period"), seeking to pursue

remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      SunOpta purports to be an operator of high-growth businesses, focusing on integrated business models in the natural and organic food, supplements and health and beauty markets.

3.      Throughout the Class Period, defendants failed to disclose material adverse facts about the Company's financial well-being, business relationships, and prospects. Specifically, defendants failed to disclose or indicate the following: (1) that defendants artificially inflated the Company's financial results and failed to properly account for results of operations, which resulted in an overstatement of the Company's profitability; (2) that the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (3) that the Company lacked adequate internal and financial controls; (4) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times; and (5) that, as a result of the foregoing, the Company's statements about its financial well-being and future business prospects were lacking in any reasonable basis when made.

4.      On January 24, 2008, after the market closed, the Company shocked investors when it reported its anticipated financial results for 2007, disclosing for the first time that it expected to incur write-downs and provisions in the range of $12 million to $14 million. Moreover, the Company stated that it would likely restate financial results from previous quarters. The Company attributed the write-downs to inventory within the SunOpta Fruit Group's berry operations, as well as difficulties in collecting for services and equipment provided to a customer of the SunOpta BioProcess Group.

5.    On January 25, 2008, the Company's shares declined $3.51 per share, or approximately 37%, to close on January 25, 2008 at $6.05 per share, on heavier than usual trading volume.

## II.    JURISDICTION AND VENUE

6.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

7.    This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

8.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). SunOpta common stock trades on the NASDAQ, which is located in the Southern District of New York.

9.    In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## III.    PARTIES

10.    Plaintiff, Roger Davidson, as set forth in the accompanying certification, incorporated by reference herein, purchased SunOpta's securities at artificially inflated prices during the Class Period and has been damaged thereby.

11.    Defendant SunOpta is a Canadian corporation with its principal executive offices located at 2838 Bovaird Drive West, Brampton, Ontario, Canada.

12.    Defendant Steven R. Bromley ("Bromley") was, at all relevant times, the Company's President, Chief Executive Officer ("CEO"), Chief Operating Officer ("COO") and a member of the Board of Directors.

13.    Defendant John H. Dietrich ("Dietrich") was, at all relevant times, the Company's Vice President and Chief Financial Officer ("CFO").

14.    Defendants Bromley and Dietrich are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of SunOpta's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## IV.    MATERIALLY FALSE AND MISLEADING STATEMENTS

15.    On May 8, 2007, the Company issued a press release titled "SunOpta Announces First Quarter Results" that stated, in part, the following:

The Company achieved record revenues for the three months ended March 31, 2007, realizing its 38th consecutive quarter of increased revenue growth versus the same quarter in the previous year. Revenues in the quarter increased by 37.6% to $183,440,000 as compared to $133,312,000 in the first quarter of 2006, led by a 39.4% increase in revenues within the Company's vertically integrated natural and organic food operations. The Company's revenue growth in the quarter reflects an internal growth rate of 16.1% on a consolidated basis and includes internal growth of 20.2% within the SunOpta Food Group.

Operating income (1) for the quarter increased by 32.3% to $7,976,000 or 4.3% of net revenue as compared to $6,031,000 or 4.5% of net revenue in 2006, driven by solid increases in operating income within the SunOpta Grains and Foods Group, the SunOpta Canadian Food Distribution Group and Opta Minerals Inc. Net earnings in the quarter were $3,850,000 or $0.063 per diluted common share as compared to $3,012,000 or $0.053 per diluted common share in the prior year . . . .

Steve Bromley, President and Chief Executive Officer of SunOpta commented, "We are very pleased with our first quarter results, driven by solid internal growth of over 20% within our vertically integrated food operations. These earnings are consistent with our expectations for the first quarter and we are pleased to reconfirm our annual revenue guidance of $740 to $760 million and net earnings guidance of $0.35 to $0.40 per share. We are confident that there is ample opportunity to drive bottom line growth and we have implemented a number of operational improvements and cost cutting initiatives which are expected to improve margins going forward. Fiscal 2007 is off to a good start and we are most excited by our internal growth, acquisition and profit improvement opportunities."

16.    On May 10, 2007, SunOpta filed its Quarterly Report with the SEC on Form 10-Q. The Company's 10-Q was signed by Defendants Bromley and Dietrich and reaffirmed the Company's financial results previously announced on May 8, 2007.

17.    The Company's 10-Q filed on August 10, 2007 also contained certifications signed by Defendants Bromley and Dietrich, that stated, in part:

The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d15(e)) and internal

control over financial reporting (as defined in Exchange Act Rules 13a -15(f) and 15d -15(f) for the registrant and we have:

    a. Designed such disclosure controls and procedures or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

    b. Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c. Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this quarterly report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this quarterly report based on such evaluation; and

    d. Disclosed in this quarterly report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting . . . .

    18.    On August 8, 2007, the Company issued a press release entitled "SunOpta Announces Record Second Quarter Results; Revenues Increase 33.5% and Net Earnings Increase 55.4%." Therein, the Company, in relevant part, stated:

The Company achieved record revenues for the three months ended June 30, 2007, realizing its 39th consecutive quarter of increased revenue growth versus the same quarter in the previous year. Revenues in the quarter increased by 33.5% to $207,977,000 as compared to $155,745,000 in the second quarter of 2007, led by a 37.9% increase in revenues within the Company's vertically integrated natural and organic food operations. The Company's revenue growth in the quarter reflects an internal growth rate of 16.2% on a consolidated basis and includes internal growth of 19.4% within the SunOpta Food Group.

Operating income for the quarter increased to $11,402,000 as compared to $8,772,000 in 2006, driven by increases in segment operating income in all groups within the SunOpta Food Group and led by the SunOpta Grains and Foods Group and the SunOpta Distribution Group. Net earnings in the quarter were $6,750,000 or $0.11 per diluted common share as compared to $4,343,000 or $0.08 per diluted common share in the prior year . . .

Steve Bromley, President and Chief Executive Officer of SunOpta commented, "We are very pleased with our second quarter results, driven by solid internal growth of over 19% within our vertically integrated food operations. These earnings are consistent with our expectations for the second quarter and reflect our continued dedication to the growth of our business, both top line and bottom line. Based on these results, we are pleased to . . . confirm our net earnings guidance of $0.35 to $0.40 per share, including the dilutive impact of the additional shares issued during the first quarter."

19.    On August 10, 2007, SunOpta filed its Quarterly Report with the SEC on Form 10-Q. The Company's 10-Q was signed by Defendants Bromley and Dietrich and reaffirmed the Company's financial results previously announced on August 8, 2007.

20.    The Company's 10-Q also contained certifications, substantially similar to the certifications contained in ¶17 above.

21.    On November 6, 2007, the Company issued a press release entitled "SunOpta Announces Record Third Quarter Results." Therein, the Company, in relevant part, stated:

The Company achieved record revenues for the three months ended September 30, 2007, realizing its 40th consecutive quarter of increased revenue growth versus the same quarter in the previous year. Revenues in the quarter increased by 41.4% to $205,666,000 as compared to $145,463,000 in the third quarter of 2006, led by a 45.2% increase in revenues within the Company's vertically integrated natural and organic food operations. The Company's revenue growth in the quarter reflects an internal growth rate of 21.6% on a consolidated basis and includes internal growth of 24.8% within the SunOpta Food Group.

Operating income for the quarter increased 154.4% to $9,025,000 as compared to $3,547,000 in 2006, driven by increases in segment operating income within the SunOpta Food Group and led by the SunOpta Grains and Foods Group and the SunOpta Distribution

Group. Net earnings for the quarter increased 234.4% to $5,096,000 or $0.08 per diluted common share as compared to $1,524,000 or $0.03 per diluted common share for the same period in the prior year. These results were realized despite significant costs and investment spending within the Company's healthy fruit snack business and SunOpta BioProcess Inc., and the unfavorable impact of the rising Canadian dollar on Canadian based overhead costs.

Steve Bromley, President and Chief Executive Officer of SunOpta commented, "We are quite pleased with our third quarter results, driven by solid internal growth of over 20% in the quarter. We continue to see strong growth prospects within each of our operating segments and are positioning the Company to realize these opportunities . . . . Based on our results to date, we are pleased to reconfirm our . . . net earnings guidance in the range of $0.35 to $0.40 per share . . . ."

22.     On November 8, 2007, SunOpta filed its Quarterly Report with the SEC on Form 10-Q. The Company's 10-Q was signed by Defendants Bromley and Dietrich and reaffirmed the Company's financial results previously announced on November 6, 2007. The Company's 10-Q also contained certifications, substantially similar to the certifications contained in ¶17 above.

23.     On December 3, 2007, SunOpta filed a Registration Statement with the SEC on Form S-3ASR in connection with the Company's public offering of 5,080,532 common shares. The Registration Statement incorporated by reference the Company's financial results for the periods ended March 31, June 30 and September 30, 2007.

24.     The statements contained in ¶¶15-23 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that defendants artificially inflated the Company's financial results and failed to properly account for results of operations, which resulted in an overstatement of the Company's profitability; (2) that the Company's financial statements were not prepared in accordance with GAAP; (3) that the Company lacked adequate internal and financial controls; (4) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times;

and (5) that, as a result of the foregoing, the Company's statements about its financial well-being

and future business prospects were lacking in any reasonable basis when made.

## V.    THE TRUTH BEGINS TO EMERGE

25.    On January 24, 2008, after the close of trading, the Company shocked investors

when it issued a press release entitled "SunOpta Provides Update On 2007 Earnings Results."

Therein, the Company, in relevant part, stated:

> SunOpta Inc. (Nasdaq: STKL) (TSX: SOY) today provided an
> indication of expected financial results for 2007.
>
> For fiscal 2007, the Company is expected to realize revenues of
> slightly over $800 million, exceeding previously provided revenue
> guidance of $775 to $800 million, an increase of approximately 34%
> versus 2006. These revenues are reflective of the continued strong
> demand in the Company's core natural and organic foods business.
>
> Earnings for the year are expected to be in the range of $0.12 to
> $0.14 per diluted common share and have been impacted by
> significant issues within the SunOpta Fruit and SunOpta
> BioProcess Groups which have led to significant write downs and
> provisions in the range of $12 to $14 million pre-tax. The
> Company is currently analyzing the impact of the adjustments related
> to the SunOpta Fruit Group berry operations, including the potential
> impact on previously issued fiscal 2007 financial statements which
> will likely result in the restatement of previous quarters.
>
> The Company has determined that inventories within the SunOpta
> Fruit Group's berry operations require write-down to net realizable
> value and preliminary estimates indicate that an adjustment in the
> range of $9 to $11 million for this issue and related items is
> necessary. Upon becoming aware of this issue, the Company has
> initiated a number of immediate and specific actions including
> engagement of an independent third party by the Company's audit
> committee to assess internal controls and processes, and
> implementation of a series of specific pricing and cost related
> actions to address potential causes of this issue. The Company's
> testing and analysis is ongoing and there can be no assurance that
> further adjustments will not be required.
>
> Included in the updated earnings estimate for the year is a provision
> of approximately $3 million pre-tax, related to difficulties in
> collecting for services and equipment provided to a customer under

the terms of an existing equipment supply contract within the SunOpta BioProcess Group. The Company also has knowledge that the customer's US affiliate is in violation of a Technical Development Agreement which delineates the intellectual property of each of the parties. As a result of failed discussions to resolve these issues, the Company has taken legal action to protect its intellectual property and recover costs, and thus feels it is necessary to reserve for uncollected amounts . . . .

26.     On January 25, 2008, Company's shares fell $3.51 per share, or 36.72 percent, to close on January 25, 2008 at $6.05.

## VI.    PLAINTIFF'S CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased SunOpta's securities between May 8, 2007 and January 25, 2008, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

28.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, SunOpta's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by SunOpta or, its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29.     Plaintiffs claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

30.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

31.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

    (b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of SunOpta; and

    (c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

32.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## VII.    FRAUD ON THE MARKET DOCTRINE

33.    The market for SunOpta's securities was open, well-developed and efficient at all relevant times for the following reasons, among others:

(a)    The Company's common stock met the requirements for public listing and was listed and actively traded on the Nasdaq, a highly efficient market;

(b)    As a regulated issuer, the Company filed periodic public reports with the SEC; and

(c)    The Company regularly issued press releases which were carried by national news wires. Each of these releases was publicly available and entered the public marketplace.

34.    As a result, the market for the Company's common stock promptly digested current information with respect to SunOpta from all publicly available sources and reflected such information in the price of the Company's common stock. Under these circumstances, all purchasers of the Company's common stock during the Class Period suffered similar injury through their purchase of the common stock of SunOpta at artificially inflated prices and a presumption of reliance applies.

## VIII.    LOSS CAUSATION

35.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class. During the Class Period, Plaintiff and the Class purchased SunOpta's securities at artificially inflated prices and were damaged thereby. The price of SunOpta's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## IX.    SCIENTER ALLEGATIONS

36.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding SunOpta, their control over, and/or receipt and/or modification of SunOpta's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning SunOpta, participated in the fraudulent scheme alleged herein.

37.    Defendants were motivated to commit the acts alleged herein in order to complete the public offering of common stock disclosed on December 3, 2007, which resulted in $67,063,022 of proceeds to the certain selling shareholders.

## X.    NO SAFE HARBOR

38.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded

herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of SunOpta who knew that those statements were false when made.

**FIRST CLAIM FOR RELIEF**
**For Violation of Section 10(b) of the 1934 Act**
**and Rule 10b-5 Against All Defendants**

39.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40.    During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase SunOpta's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

41.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for SunOpta's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein.

42.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about SunOpta's financial well-being and prospects, as specified herein.

43.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SunOpta's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about SunOpta and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of SunOpta's securities during the Class Period.

44.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the

Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

45. The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SunOpta's financial well-being prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's financial well-being and prospects throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

46. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of SunOpta's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of SunOpta's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired SunOpta's securities during the Class Period at artificially high prices and were damaged thereby.

47.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that SunOpta was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their SunOpta securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

48.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM FOR RELIEF
### For Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

50.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.    The Individual Defendants acted as controlling persons of SunOpta within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various

statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

53.     As set forth above, SunOpta and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses

incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 13, 2008

KAPLAN FOX & KILSHEIMER LLP

By:_____

Frederic S. Fox
Joel B. Strauss
Jeffrey P. Campisi
850 Third Avenue, 14th Floor
New York, New York 10022
Tel: (212) 687-1980
Fax: (212) 687-7714
*Attorneys for Plaintiff*

# KAPLAN*FOX*

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, Roger Davidson, hereby certify and swear as follows:

1. I have reviewed a Complaint against **SunOpta, Inc.** alleging violations of the securities laws and authorize its filing;

2. I am willing to serve as a representative party on behalf of a class, or to be a member of a group representing a class, including providing testimony at deposition and trial, if necessary;

3. I have not within the 3-year period preceding the date hereof sought to serve, or served, as a representative party on behalf of a class in an action brought under the federal securities laws, unless noted hereafter: _____.

The following is a description of my transactions during the class period specified in the Complaint in the securities of **SunOpta, Inc.**:

| Security | Transaction | Trade Date | Price Per Share |
|---|---|---|---|
| STKL | PURCHASE 700 Shares | 9/10/07 | $13.7657 |

4. I did not purchase shares of **SunOpta, Inc.** at the direction of my counsel or in order to participate in any private action under the federal securities laws;

5. I will not accept any payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Date: ___2/11___, 2008

_____
ROGER DAVIDSON